Your Honors, good morning. Gary Burcham on behalf of Petitioner Ron Weaver. In light of the recent Supreme Court decision, I'd like to start with the Martinez v. Ryan argument addressing the procedural bar that was found below by the District Court. In this case, the Martinez district court in one primary respect, that being that Arizona required the litigant in that instance to raise any trial IAC claims on a collateral attack and specifically barred litigants from bringing trial IAC claims on direct appeal. While in the California system, there is no explicit bar to litigants raising trial IAC on direct appeal. The government argued that that distinction rendered Martinez v. Ryan applicable to Mr. Weaver's case. We argued, and this was prior to Trevino coming out, that there really was no distinction between the Arizona system or the distinction didn't matter between the Arizona system and the California system because for all intents and purposes, the California system is set up in a way whereby appellants who want to raise trial IAC claims are really forced to do it on habeas corpus and a collateral attack as opposed to a direct appeal. Trevino came out a few months ago from the U.S. Supreme Court and really is in line with what we argued in our briefing, which is that if it's very unlikely in a typical case that a litigant is going to be able to raise his trial IAC claims on direct appeal, then that's really the same thing as what they looked at in Arizona, which was an explicit bar to being able to raise those claims on direct appeal. Let's go into that a little bit. on direct appeal, quote, virtually impossible, unquote. Why is it similar? Why does a similar situation occur in California? From my own practice and from my own experience as a California trial judge, sentencing can be put off with the agreement of parties or for good cause if the judge finds it so in plenty, as long as you want to. And the defendant gets credit for time served while the trial court transcript is being prepared. We've done it a lot of times. So why is this like Texas? I think the difference is not just in terms of preparation of the transcript, which the court did focus on in Trevino, but it's the fact that under the California scheme, you're limited to the trial court record. In the Duvall case, the California courts have spoken about the fact that when you raise these sorts of trial IAC claims, you can't just make the claims. You have to support them with documentation, affidavits, declarations, evidence in support of what your IAC was. And the problem with the California scheme, the problem with raising these claims on direct appeal in the California scheme is that you're limited to the trial record, and that's what the California rule would provide. And so attempting to, for instance, if Mr. Weaver attempted to raise these claims on direct appeal, he would have been limited simply to what was in the trial record. And under the California rules, he would not have put forth enough to make a viable claim for IAC money. Why would he have been limited to the trial record? Why couldn't he have got a declaration from his attorney saying, yes, I was ineffective in assistance of counsel because I didn't do the investigation that the plaintiff requires? Why couldn't that be part of the ineffective system of counsel claim on direct appeal? Well, I'm not sure the trial court would have allowed him to expand the record with those sorts of claims on direct. On motion for new trial, why not? Error of law has been made. I'm having trouble understanding why you're equating the California procedures available with those which the Supreme Court found in Texas and found making it direct appeal virtually impossible. Well, I think in Texas there could have been a similar course followed. In that situation, it was the new trial motion where you can expand the record. And I think there's probably nothing in the Texas scheme to, as Your Honor suggested. But they have a 30-day deadline. You can't move it. California, you don't have a 30-day deadline. That's what I'm trying to figure out, why Texas is like California. It's not that 30-day hard and fast deadline in California that there is in Texas. But I think beyond that specific rule, we're still faced with the problem in California that the rules require on direct appeal that you be limited to the record on direct appeal. And at the time that the ---- Well, you're limited to the record on direct appeal in the appellate court. Correct. The question is can you supplement the record in the trial court on motion for new trial by showing ineffective assistance of counsel by declarations of expert witnesses as to what counsel did incorrectly in the trial for purposes of getting a new trial from the trial court. And I don't see why you can't do that. Well, I think the best answer to that question, Judge, is that generally the attorney who represents you through trial is the attorney who represents you through sentencing. And it would be the unusual ---- Well, that's not always so, because what we see, at least my experience, is that the attorney who represents the defendant through trial falls on his sword on the claim of ineffective assistance of counsel for a new counsel that says, look, A did a bad job. And A says, mea culpa, I did a bad job. And then we proceed along that way. That's a pretty common way. Sure. But I think that usually happens once the direct appeal is filed. And what we're talking about here is the need to expand the record at the trial court level. And that's where we have usually the same counsel handling the case through its termination in the superior court. And by the time it does get to direct appeal, a new lawyer is appointed, and he may go back to the trial attorney and say, Why don't you address yourself to the second element of Martinez's intravenous, which is the requirement that Weaver's IAC claims be substantial in addition to the ---- Sure. And that was the government's fallback argument in its 28J letter. The magistrate judge dealt with the merits of these issues in just a couple of sentences. And the district court found the procedural bar but said if it didn't, it would have adopted the magistrate judge's analysis in the alternative and made no further analysis. So I think the analysis from below is just simply not enough based upon the seven claims that Mr. Weaver raised. There's 40 pages of briefing in our opening brief about why the claims are substantial. And there are seven claims raised by Mr. Weaver. What's your strongest one? I think the first one is probably the strongest one, the failure to investigate the case. The harm from that is divided into a couple different areas. For instance, the failure to call the witness who Mr. Weaver declares would have said that he was with him the entire time and the witness would have said that the SOFA where the count seven incident allegedly occurred had been sold a week before, so it physically could not have happened. Investigation with regard to the suggestivity defense for counts one through three. And so I think that probably the best claim is the first claim, which just essentially submits that trial counsel did not investigate the case and that affected the way he tried the case. And I cited the Reynoso case, which talks about the fact that strategic decisions made following a failure to investigate really aren't strategic decisions because you're not in a good position to defend the charges and try the case at that point. So I think they're all viable claims. I think the first claim is the strongest, and that's the one that Mr. Weaver spent the most time on in his petition. I think the second issue is a good issue. The introduction of the photos obviously was very damaging evidence against Mr. Weaver. The testimony from the photos he saw in the early 90s, 90, 91, 92, through by opening the My Documents portion of the computer. Well, there wasn't the Microsoft Windows system when that was in place, and that's something the jury should have heard about to question all of Mr. DeVance's testimony about what he allegedly saw on Mr. Weaver's computer. The third issue concerning the arguments on the judgment of acquittal. I think Mr. Weaver sets forth some good fact-based arguments regarding trial variance issues, which should have been presented to the trial court, statute of limitation arguments that were misconstrued and incorrectly presented to the trial court. I don't know if the court wants me to go through all seven, but the government never got to the merits of the case because it focused simply on the four procedural arguments set forth in our brief. But I think that the opening brief sets forth essentially the similar arguments that Mr. Weaver made to the state courts and to the trial court, and I think that those are substantial IAC claims. Certainly, they have some merit, and that's a requirement under Martinez, which is that the claims have some merit. And I think that to say that these claims have no merit and don't even clear that bar would be belied by the record and by the facts of the case. And so if the court doesn't have any other questions about the Martinez application or the substantial question, I will reserve my final four minutes for rebuttal. Thank you very much. May it please the court, Deputy Attorney General Matt Mulford on behalf of the warden. In looking at the briefs and the record, I didn't hear any questions regarding anything that we really briefed, and all the issues were focusing on the cases that the district court never heard, and the one that came down after our briefing, Trevino. So that's where I'd like to start if there are questions. California is different. It is certainly different than Arizona. It is different enough from Texas such that the result in Trevino should not attain for California cases. In Texas, the court recreated the phrase, it was virtually impossible to raise ineffective assistance of trial counsel claims on direct appeal in Texas for several reasons, some of which Judge Beyer has identified. It is not. Mr. Mulford, don't we have case after case in California saying that ineffective assistance of counsel claims are better raised in collateral proceedings because an evidentiary hearing can be held at which witnesses can come in and say counsel should have done this or should not have done that, and you can't do that on direct appeal, can you? Not typically, with the big exception that you've already mentioned, that motions for a new trial in California can be developed. The California courts will consider motions, emergent motions to fire appointed counsel before sentencing. Those are granted. IAC claims are raised before sentencing and before direct appeal, such that this information can make its way into a record of a direct appeal in California. It is not virtually impossible. That's not a typical case. Not typical, no. Judge Beyer, you are correct, and there is a long line of California cases saying that if you are raising information outside the record, habeas corpus is the way to go. But the distinction here in California is outside the record versus inside the record. It is not based on IAC per se. The Robbins case is a good example of one, and that's footnote 34, where they talk about how these claims that are based outside the record will not be barred under California's procedural rules. So that's somewhat similar in Texas. It is similar to the federal rule. I think Bassaro is the case. Please hold me to that. So there is some differences. There are recognitions that if you need to go outside the record, habeas corpus is the way to go. But even there, California is different than Texas, particularly regarding the specific bar that is applied in both Martinez and Trevino. Now, the bar that was applied by those states is a successive petition bar or an abuse of the writ bar. Now, the problem was, and this is going back to the case of Coleman v. Thompson, if you have an IAC claim regarding trial counsel, and if you can't raise it on direct appeal for whatever reason, and if you are given a lawyer and a collateral review, and that lawyer is also ineffective, the initial claim under the rule of Coleman Thompson will always be shielded from federal review and will never have its day in federal court. That situation does not occur in California because if you've got a trial IAC claim that you cannot raise on direct appeal, and this is going to be typically true in California capital cases where we routinely appoint counsel for everybody in a death penalty case, if your first capital habeas corpus counsel is also ineffective, California, in the way it imposes its procedural default rule regarding successive petitions and abuses of the writ builds in an analysis to determine whether that first habeas counsel was IAC such that they will not bar that first trial IAC claim due to the successively presented claim. California, in other words, does not follow that rule in Coleman v. Thompson that created this whole Martinez and Trevino issue in the first place. Okay, so at least for capital cases, please say that California is different. Now, that particular bar, that successive petition bar, is different than the one Mr. Weaver had. So we can see that he is dealing with a different bar, and it's not there. And before I leave at this point, the Clark citation in our 28-J letter explains why California is different. All right. The bar that now applies to Mr. Weaver is based on timeliness, or it's a statute of limitations type bar. Again, California's rule is unspecified. It doesn't have precise dates, but it is more or less a timing rule, not much different than the one applied to federal petitioners in 2255F. Okay, so you actually have to show up in court, you petitioner yourself, you've got to plead some facts explaining when things happened, and then again, California looks at the facts pleaded to see whether it makes a case. So, for example, in a California case, if you were to say, I have newly discovered evidence that is not in my trial record, I must present it on habeas corpus, I just learned about it today, here it is, California will not find that claim to be untimely unless they determine, more or less on the merits, that you should have known about it sooner. Okay, and so that's what we're dealing with with Mr. Weaver. He knew well in advance of the time he filed his habeas corpus petition, so there is no unfairness as to him. It's certainly not in the type of unfairness that we're dealing with in Martinez and Trevena regarding Coleman and the different counsel. He knew and didn't do anything about it. He never asked for a lawyer on habeas corpus. Okay. I think he did. Didn't he ask for a lawyer? I think he did request an attorney. He's got lots of pages and he may have done it at one point. He met his initial collateral review and he was denied. All right. I cannot remember, and if I'm incorrect, I apologize. The bigger problem for other people in California is that California will give you a habeas corpus lawyer once you plead a prima facie case for relief. Okay, so the California rule of court, it's 4.551C2. I think. I looked it up again this morning. 4.551C2. California will give you a lawyer if you have a claim that states a prima facie case for relief. Again, if you come in with something that suggests you really need an evidentiary hearing, you will get a lawyer. They will be returnable. If you do it to the Court of Appeal or the Supreme Court, they will return it to the Superior Court where you'll have the trial court hearing then and there. Again, Mr. Weaver was determined not to do that. His claims were not good enough as a matter of California law to get him his lawyer. And so, again, we should be outside Martinez. We should be outside Trevino. All right. Now, finally, we did not brief this before because the claims frankly seem so insubstantial that it was not worth doing it. But now that Martinez is out and now that Trevino has further expanded Martinez somewhat, if you look at the seven IAC claims that are presently before the Court, the seven IAC trial claims, we agree with counsel that the first one is the best, but it is not good enough. The other six plainly do not state a substantial question or a substantial issue as that phrase is used in Martinez and then again in Trevino. We don't know much about what the Supreme Court thinks is or is not a substantial question for purposes of Martinez and Trevino. But there is a hint in Martinez. There is a citation to Miller L. v. Cockerell, I believe, which is a case that concerns the issuance of a certificate of appealability. And so there is some indication that you need to have that same type of pleading standard to state a claim for purposes of getting a certificate of appealability before your claim will be substantial. That, you know, as the circuit generally looks at certificates, they take a quick look to see if things are okay. I don't think that's quite good enough. Again, we're talking about habeas corpus. We should see some factual specific pleading. In these cases, it's a Strickland issue, so we should be talking about factually specific pleadings of both deficient performance, under Strickland v. Washington, and factually specific pleadings of prejudice under Strickland v. Washington. Now, in page 86 of volume 2, there's a summary of Mr. Weaver's IAC claims, 1 through 7. They are also copied by the magistrate judge on page 12 of the excerpts. In not one of them does he plead prejudice. He's got lots of complaints about what his trial counsel should have done or should not have done. He should have stopped the witness from perjuring himself. He doesn't explain how that could have happened, so he doesn't get the tactics part of the Strickland analysis either. He certainly doesn't explain what would have happened if he'd stopped the witness from perjuring himself or how or what. It's not a sufficient factual pleading. That's number two. Three. He says the failure to object to informants' allegedly false testimony was the ineffectiveness of his counsel. So he says exactly how it should have been stopped. He doesn't identify what it was here. It goes into great detail later. But as far as a pleading as to what would have changed or how it would have mattered, it's not good enough. And number two is actually the second best one. Third, he should have prevailed on a motion for acquittal. Okay. So the motion was made. The court rejected it, but he should have somehow done better. Again, I don't see how that's possibly or plausibly a substantial claim. Number four. Failed to ensure that there was an instruction. Well, in California, you can raise instructions on direct appeal pretty much at any time. You don't need to preserve or object. Number seven is also an instructional challenge. Again, could have been raised on direct appeal in California. Don't need habeas counsel. Five. Bolstered credibility during cross-examination. Pure tactical question. You might disagree on how well it played out, but that is pure tactics. That's Strickland prong one, but not a substantial question. Number six. Failure to object to improper cross-examination of the defendant. Same thing. So at least five of them don't even come close that are not substantial. Number two, perjury. Maybe we'll look a little closer to see exactly what facts were alleged to have been perjured and why they would matter. Number one. Failed to conduct a pretrial investigation. Well, now we're getting close. And this is actually kind of what the Supreme Court was looking at in Trevino, pre-trial investigation. But since we've already briefed this case, since we've already been through it, we can tell that what he's actually complaining about is the failure to call a particular witness who would have testified that I didn't see Mr. Weaver molest the second girl on one of the three instances where it actually happened. But the problem with that is, as we argued in our brief, I think page 28 is toward the end, in reference to something that Pollard argued at page 38 of his brief, that they were prepared to stipulate to that fact at trial. Who was? The prosecution and the defense counsel. Okay? So Mr. Weaver's complaint that I was with her all the time. Again, we're talking about events that happened in the past. Let me start over. Two victims. First victim is discovered first in time when she is, I don't know, eight years old or so. There is investigation made. And then it turns out that there is another girl who is now older but had been molested previously. So we are looking backwards into time as to what the second girl was done earlier in chronology. And your suggestion is that since the prosecutor offered to stipulate to that fact and that stipulation was not accepted for whatever reason, there is no prejudice between the offer to stipulate and whether the witness had actually shown up. Exactly, Your Honor. Yes. Thank you. Counsel, can I just ask a question back to Martinez just for a second? What is the State's position with respect to whether this panel needs to reach the Martinez question as to whether it applies to California or not? Based on the way California conducts its criminal justice system and the way it has structured everything, if you are looking at whether the State can apply Martinez or not apply Martinez, our answer is no because we look at things individually. We look at things based on individual defendants and individual claims. And so it is a mistake just to say that California either applies or does not apply. Now, if that choice is forced upon us, then we say we do not apply because of all those individual reasons that require individual things. But there may be cases that are similar enough, but I highly doubt it, that it would be the same. Thank you, Counsel. Now, you say because of the individual treatment which California gives to post-conviction remedies. Correct. And expand on that a bit. Why does that make a difference? Well, I think the big example is with the successive petition bar. Let me reiterate this. But California will not find a claim to be barred as presented in a second petition, that is it should have been raised in an earlier petition, when there is an issue as to whether the first lawyer was ineffective, without finding more or less on the merits that that first lawyer was not ineffective. So the concerns in Martinez and Trevino about how that particular IAC claim will always be shielded are not present in California based on the way they actually apply the bar. There is going to be a determination that the second lawyer was not ineffective before the later bars applied regarding them. And what's the case that you cite? It's Henry Clark is the big one that says that. It's in my 28-day life. It's where it distinguishes Coleman versus Thompson. And again, California, it does not apply the time bar, for example, to claims of newly discovered evidence without first determining that the alleged newness or novelty is not in fact new. It's kind of the same thing. They say, you're arguing this? No, it's not new. You're barred. You should have come earlier. All right. I think we're taking the passage of time. Counsel, do you wish for a couple of minutes for rebuttal? Yes, and time saved. Right. Thank you very much. The government talked about the fact that, well, if you plead a private patient case for relief, you're appointing counsel for the collateral attack. Well, all this goes to what Sherino talked about at length, which is the need for someone who's dealing with these sorts of issues to have a lawyer who can do the form and help them do it. They need someone who knows the rules of evidence. They need someone who knows the rules of procedure. They need someone who understands what sort of investigation should have been done in a particular case. And for the government to say, well, this can be done, and it doesn't matter if a lawyer is appointed or not, this is the realities of a pro se, usually incarcerated, usually indigent defendant, trying to cobble together a habeas petition alleging ineffective assistance of counsel when generally they have absolutely no idea about any of the things I spoke about earlier, trial procedure, trial evidence, and maybe don't even know really what went wrong in their case because they're not legal experts and they don't understand what should have been done by their attorney at the trial court level. So are you asking us to extend Gideon and the Sixth Amendment to the initial collateral review? Do you think that's where the Supreme Court is going with Martinez and Trevino? I don't think so. I think they made clear in Trevino that they're not going there. They're just simply in an equitable fashion recognizing the issues that exist with pro se litigants trying to get through this system when there's no counsel appointed on the first habeas appeal. The government talks about page 86 of the ER and the grounds for relief. It's not fair to try to get through these issues by looking at essentially the table of contents. I mean, it's more than 100 pages of briefing for Mr. Weaver with detail, excruciating detail about what happened, what was wrong with what happened, and how it affected the trial. And it was not just simply saying that, oh, this happened and it was a violation of California code. He specifically couched these all as ineffective assistance of counsel claims and explained why the attorney didn't investigate or the attorney did not object to certain evidence or the attorney did not present facts that should have been presented in connection with the motion for acquittal or jury instruction. So he's not quibbling with evidentiary rulings by the trial court. He's saying that his attorney in seven different areas, more than seven different areas, made some serious mistakes and those had effects on the verdicts in his case. And so there's ample briefing as to the violations and ample briefing as to what the prejudice was for Mr. Weaver. Regarding the Skamara issue, the stipulation was not close to what Mr. Weaver wanted and expected from Mr. Skamara. The government offered to stipulate to the fact that Skamara never saw Mr. Weaver do anything inappropriate with the girl. That is completely different from what Mr. Weaver said Skamara would have testified to, which is two things. Number one, that he was with Mr. Weaver the entire day and never saw anything. That's a whole different situation than simply saying I didn't see anything, that he was with Mr. Weaver the entire day and never saw something. And second, that the sofa where she had initially said the incident occurred was gone. It had been gone for a week before the movement. So the offer from the government, the D.A. offered to stipulate to that because it wouldn't have affected their argument one bit. And the stipulation never came into evidence. But even if it had, it was a far cry from the probative, valuable evidence that Mr. Weaver said and pled that Mr. Skamara would have provided to his defense of trial. Thank you very much. Thank you very much. The case of Weaver vs. Clark will be submitted.
judges: Navarro, O'scannlain, Bea